IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| DEBORAH GREGORY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION |
| ) | NO. |
| MERRICK B. GARLAND ) | |
| ATTORNEY GENERAL, ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| DRUG ENFORCEMENT ) | |
| ADMINISTRATION ) | |
| ) | |
| Defendant. ) | |

# *COMPLAINT*

### *Introduction*

1. This is a complaint for damages, declaratory and injunctive relief authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e et seq. ("Title VII"), and/or pursuant to the Age Discrimination in Employment and Act of 1967 ("ADEA"), as amended 29 U.S.C., 633a et seq.,

2. This lawsuit is brought to prevent Defendant, MERRICK B. GARLAND ATTORNEY GENERAL, U.S. DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION (DEA),  pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, et seq. ("Title VII") and ("ADEA"), from maintaining a policy, practice, custom or usage of discriminating against, Plaintiff, DEBORAH GREGORY, in regard to terms, conditions and privileges of employment, and for damages, and other equitable relief for Plaintiff, DEBORAH GREGORY , who has been discriminated against by Defendant on the basis of national origin, sex, age, and reprisal  (prior EEO Activity).

*Jury Demand*

3. A jury is hereby demanded.

*Jurisdiction and Venue*

4. This action is brought for a declaratory judgment, injunctive relief and compensatory damages, pursuant to 42 U.S.C. Section 1983, 20 U.S.C. Sections 1681-1688, 28 U.S.C. Sections 2201 and 2202. This Court has jurisdiction to hear the Plaintiff's claims pursuant to 28 U.S.C. Sections 1331, 1343(3) and (4) 1337 and 42 U.S.C. 2000e-5(f) [Section 706(f)(s) and (3) and 704(a) of Title VII], and the "ADEA."

5. Venue is proper in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. Section 1391(b) as El Paso County, Texas is the county where the Defendant operates the MERRICK B. GARLAND ATTORNEY GENERAL, U.S. DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION (DEA), Plaintiff's employer. Further, all actions complained of herein occurred within the El Paso County, Texas.

*Parties*

6. **DEBORAH GREGORY** is a Hispanic-female citizen of the United States and a resident of the City of El Paso, El Paso County, Texas.

7. Plaintiff is employed by the Defendant, **MERRICK B. GARLAND ATTORNEY GENERAL, U.S. DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION (DEA)**. The Defendant maintains and administers records relevant to its employment practices. Service of process may be made upon the United States Attorney for the Western District of Texas, and the United States Attorney General, Department of Justice, by registered or certified mail, pursuant to the Federal Rules of Civil Procedure (Rules 4(I)(1)(A), (B) &

(C)).

8. Defendant is an employer within the meaning of 42 U.S.C. 2000e, et seq., ("Title VII") and (ADEA).

## *Exhaustion of Remedies*

9. Plaintiff filed a formal complaint of discrimination. Such filing was within at least 45 days of the last act of which he/she complained. Plaintiff's formal complaint alleged denial of Plaintiff's rights, by Defendant, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., as amended by the Civil Rights Act of 1991. Specifically, DEBORAH GREGORY alleges that he/she was discriminated against because of her national origin (Hispanic), sex (female) and subject to retaliation (prior EEO Activity).

10. All conditions precedent to the filing of the lawsuit has been met.

## *Factual Allegations*

11. Plaintiff, Deborah Ann Gregory, a DEA Program Analyst, GS- 0343-13, was discriminated and retaliated by the Defendant on the bases of her sex (Female), age (DOB: 12/28/1962), national origin (Hispanic), and reprisal (participated in EEO investigations).

12. On August 26, 2015, Plaintiff was notified by Director Timothy Jennings that she would be detailed from the Program Analyst position in the Office of the Executive Assistant to the Joint Collection Management Unit, effective August 31, 2015.

13. On October 16, 2015, Plaintiff was notified that she was the subject of an Office of Professional Responsibility (OPR) investigation and that Director Jennings and Executive Assistant Scott Linn initiated the investigation.

14. On December 16, 2015, Plaintiff learned that she was not selected for the position of Program Analyst. GS-343-14, Bogota County Office, advertised under Vacancy Announcement

Number F-OE- 1509984-MP-RCW.I

15.     Plaintiff was stationed at the Drug Enforcement Administration at thc El Paso Intelligence Center (EPIC), El Paso, TX.  At the time the discrimination occurred Plaintiff's position was a detail to the Joint Collection Unit (JCMU) since August 31, 2015. Plaintiff had been employed by DEA since December 2004.

16.     At the time of discrimination, Plaintiff's first and second level supervisors were Mr. Scott Linn — Executive Assistant to the Director and Mr. Timothy Jennings — Director/Special Agent in Charge.

17.     Plaintiff has participated in the past participated in prior EEO investigations. Most of these investigations included Mr. Timothy Jennings, Mr. Pete Swicker (retired DEA), Ms. Ruth Porter-Whipple, Mr. Scott Linn (retired DEA), Mr. Edward Regula, Mr. Reynaldo Cervantes (retired DEA), Mr. John "Travis" Nattinger, Mr. Rodney Benson (retired DEA), Mr. Douglas Poole, Ms. Gisele Gatjanis, Mr. Morgan Holley (retired DEA), Mr. Gary Newcomb, Ms. Lisa Walbert. And Mr. Angel Olivares.

CLAIM I.

18.     On August 26, 2015, Director Timothy Jennings told Plaintiff that she would be detailed from her Program Analyst position in the Office of the Executive Assistant (NEX) to the Joint Collection Management Unit (JCMU), effective August 31, 2015 (with no end date), because Plaintiff was to assist the JCMU with "huge statistical reports for the next EPIC Board of Directors meeting and as well as for a white paper." The e-mail also stated that the JCMU was "developing a more uniformed tracking, process for the statistical reporting and need assistance with that project." Mr. Jennings asked that Plaintiff coordinate with Mr. Linn on any pending tasks Plaintiff had with NEX.

19.     On August 28, 2015, Mr. Jennings issued an EPIC-wide memorandum on the Subject: "Personnel Reassignments," which included Plaintiff's temporary reassignment from NEX to JCMU. Plaintiff was not given the opportunity to return to our position in the Office of the Executive Assistant. Plaintiff's FY 2016 Performance Work Plan (PWP) showed Mr. Dewey Severs, as Plaintiff's supervisor and rating official, with Director Jennings as the reviewing official.

20.     Plaintiff was never provided with a Standard Form 50 (Personnel Action Form) documenting her temporary detail to JCMU, and the current copy of EPIC's Table of Organization (TO) which would list Plaintiff as a Program Analyst in the NEX unit.

21.     Plaintiff was not pleased to see she reassigned while she was on annual leave, and being notified via e-mail. As the only Program Analyst (PA) assigned to EPIC, Plaintiff was transferred from the NEX, to the JCMU and Plaintiff did not retain her duties. Plaintiff was relocated to a cubicle in the JCMU area. There was never a discussion or consultation with her regarding this reassignment. Plaintiff, however, did not retain her PA duties, with the exception of some statistical reporting. Statistical reporting is a minor task within the greater functions of a PA position. This is despite the fact that she had received "Outstanding" yearly ratings and Performance Awards for her job performance as a PA in the NEX. This was clearly a move on the part of Defendant to not provide Plaintiff any advancement in her career which negatively impacted her future career advancement. Plaintiff was discriminated because of her age and national origin when she was detailed to the Joint Collection Management Unit when her Program Analyst duties were assigned to a white, under age 40 female, with only 3 years of experience as a DEA employee.

22.     On September 22, 2015, Plaintiff discussed her feelings about this reassignment with Mr. Scott Linn during Plaintiff's FY 15 evaluation review. She expressed to him the disappointment and concern that Plaintiff was not advised nor consulted about the move. Plaintiff asked who was going

to replace her or perform her duties while assigned to the JCMU but received no answer.

23. Plaintiff was discriminated against by two white, Non-Hispanic males based on her sex (Female) and national origin when she was detailed to the Joint Collection Management Unit.

24. Plaintiff was discriminated against based on reprisal (participated in EEO investigation, when Plaintiff served as a witness for several EEO investigations at EPIC, a fact known to both Mr. Jennings and Mr. Linn.

CLAIM 2.

25. On October 16, 2015, Plaintiff was notified by OPR Inspector Brian Flannery that she was the subject of an Office of Professional Responsibility (OPR) investigation, and that Director Jennings and Executive Assistant Scott Linn initiated the investigation. Mr. Flannery also advised Plaintiff that this investigation was based on findings from participation in a Management Review conducted on August 13, 2015 by the DEA El Paso Field Division. According to Mr. Flannery, Plaintiff was being interviewed concerning the allegations or "False Statements."

26. The OPR investigation was a result of a Management Review conducted by the El Paso Field Division which interviewed the four persons assigned to the NEX Staff (two white males and two females, one white and one Hispanic). Plaintiff (Hispanic) was the only, who became the subject of an OPR investigation. The investigation related to person responsible for making the malicious and false comments about Ms. Madeline Alvarez, who was a white female under 40, Ms. E. Ackles. Ms. Ackles was not reprimanded for her conduct. Instead, Plaintiff was the person referred to in the OPR for disclosing to Ms. Alvarez what Ms. Ackles said. Ms. Ackles was maligning Ms. Alvarez's character and professionalism, and Plaintiff felt a moral obligation to advise Ms. Alvarez of this incident, since Plaintiff had been a witness in her EEO Complaint.

27. Plaintiff was discriminated against based on her national origin (Hispanic) as she was the

only Hispanic among the four NEX staff members who, as a result of the management review, became the subject of an OPR investigation. The white female who made the derogatory comments against Ms. Madeline Alvarez, was not reprimanded.

28. Plaintiff was further discriminated against based on reprisal (participated in EEO investigation. The management review resulted from an OPR complaint filed by Ms. Madeline Alvarez in June of 2015 for the disparaging and malicious remarks made about her by Ms. Ackles during a staff meeting in which Plaintiff was present. The management review was conducted in August of 2015, and Plaintiff was summoned as a witness on Ms. Alvarez' OPR complaint. The OPR investigation was initiated by Mr. Jennings in a memorandum dated August 25, 2015, the day before the memorandum reassigning Plaintiff from NEX to JCMU was issued by him. The date timeline of these events clearly confirms that the reassignment was in reprisal for Plaintiff having followed the dictates of her conscience in apprising Ms. Alvarez of the malicious comments about her character and performance made by Ms. Ackles.

29. No action was initiated or even contemplated against Ms. Ackles, who has maligned fellow employee who happen to be a Hispanic female, over the age of 40, and has pending EEO Complaints against Messrs. Jennings and Linn.

30. Mr. Jennings closed the OPR matter and then advised that, in the future, Plaintiff should "protect my integrity." Mr. Jennings comment was a veiled threat of possible future actions against Plaintiff. Plaintiff was told by Mr. Severs that she had no business being in there and that she could "start with a clean slate with me."

CLAIM 3.

31. Plaintiff applied online on September 2, 2015, for the Program Analyst, GS-343-4 position. On December 16, 2015, Plaintiff learned she was not selected for the position of Program Analyst,

GS-343-14, Bogota County office. This action was initiated on the heels or being detailed to the JCMU and filing of EEO Complaints against Director Jennings and Mr. Linn. Both were aware that Plaintiff had applied to the Bogota office since had Plaintiff advised Mr. Linn of that fact on September 29, 2015, during her FY15 evaluation.

32. A white (non-Hispanic) younger female Ms. Angela Jarrell. was selected for the position.

33. There were also other employees who were more favorably treated that Plaintiff. On January 27, 2014, GS-132-9 Ms. Marilyn Braun-.Epp (white female, under 40 and the daughter of a DEA special agent) was named to replace Ms. Madeline Alvarez in the Executive Assistant Unit (NEX) at EPIC. An EPIC-wide memo was sent out advising that Ms. Braun-Epp "will "Orb: Special Assistant to the Director writing executive level briefings and papers, well as assisting with other executive level analytical requirements." The "Director" referenced in the memo was Mr. Timothy Jennings. Ms. Braun-Epp. a GS- 132-9 (at the time and with less than years on the job with DEA), was placed in a position that is designated on DEA's Table of Organization for a GS-132-14. Additionally, Ms. Braun-Epp was asked if she wanted to work in NEX. Furthermore. Ms. Braun-Epp was promised that if she stayed in NEX for one year, the RMOs would help her get reassigned wherever she wanted to go. The specific quote that Ms. Braun-Epp told others was "give us one year and we will help you gel wherever you want." Ms. Braun-Epp was not in NEX for one year, as she reported to NEX on January 27, 2014, and on November 13, 2014, was reassigned to Burlington, VT. Ms. Braun-Epp's transfer to Burlington, VT, was authorized by DEA's Career Board as a lateral transfer. Ms. Elizabeth Ackles, also a GS-132 and a white female under the age of 40, with less than 4 years' experience as a DEA employee

34. Plaintiff was continually subjected to a hostile environment at EPIC and, since her reassignment to the JCMU, her talents and abilities were being wasted and did no not align with the

Page 8

EPIC Partnership Implementation Agreement. Having Plaintiff in JCMU does not further EPIC's mission or enable just use of Plaintiff abilities as a DEA Program Analyst.

35. Specifically, the first act of discrimination against Plaintiff occurred when Mr. Jennings and Mr. Linn relieved Plaintiff of her Program Analyst duties and physically relocated her to another unit and within EPIC. These actions were retaliatory prompted by Plaintiff's testimony in the Management Review process conducted at the I: I Field Division.

36. Mr. Jennings continued to malign Plaintiff damaging her DEA career when he requested OPR to investigate

## COUNT I
## TITLE VII VIOLATION - SEX (GENDER)

37. The Plaintiff realleges paragraphs 1 – 36 as if fully set forth herein.

38. Defendant discriminated against Plaintiff herein since the agents and employees of Defendant engaged in discrimination based on sex in violation of Title VII of the Civil Rights Act. Specifically, the Plaintiff suffered adverse employment consequences as a direct result of sex (make). As a direct and proximate result of these actions, Plaintiff suffered sex discrimination.

39. By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings and heretofore and is therefore entitled to attorney's fees pursuant to Title VII and under the general equity Powers of the Court.

## COUNT II
## TITLE VII VIOLATION – RACE/NATIONAL ORIGIN (HISPANIC)

40. The Plaintiff re alleges paragraphs 1 - 39 as if fully set forth herein.

41. Defendant discriminated against Plaintiff herein since the agents and employees of Defendant engaged in discrimination based on National Orgin in violation of Title VII of the Civil Rights Act. Specifically, the Plaintiff suffered adverse employment consequences as a direct result of

Race/National Origin (Hispanic).  As a direct and proximate result of these actions, Plaintiff suffered Race/National Origin (Hispanic) discrimination harassment.

42. By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings and heretofore and is therefore entitled to attorneys' fees pursuant to Title VII and under the general equity Powers of the Court.

### COUNT III
### TITLE VII VIOLATION - SEX (GENDER)

43. The Plaintiff realleges paragraphs 1 - 42 as if fully set forth herein.

44. Defendant discriminated against Plaintiff herein since the agents and employees of Defendant engaged in discrimination based on sex in violation of Title VII of the Civil Rights Act. Specifically, the Plaintiff suffered adverse employment consequences as a direct result of sex (sexual harassment).  As a direct and proximate result of these actions, Plaintiff suffered sex discrimination.

45. By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings and heretofore and is therefore entitled to attorney's fees pursuant to Title VII and under the general equity Powers of the Court.

### COUNT IV
### AGE DISCRIMINATION

46. Plaintiff realleges paragraphs 1 - 45 as if fully set forth herein.

47. The actions of Defendant constituted age discrimination against Plaintiff in the creation and condemnation of an age bias which changed the terms and conditions of her employment.

48. The unlawful employment practices in violation of the ADEA herein complained of, occurred in the course of Plaintiff's employment with Defendant, and were carried on by Defendant's agents, servants, and employees and committed because of Plaintiff's age.

49. Defendants discriminated against Plaintiff herein because of her age with respect to the terms, conditions, privileges, advantages and benefits of her employment with Defendant. Specifically, Plaintiff was held to stricter standards of performance, and denied benefits of employment accorded other employees.

50. In addition, Plaintiff was treated dissimilarly from other employees.

51. By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings heretofore and is therefore entitled to attorney's fees pursuant to the ADEA and under the General Equity Powers of the Court.

### COUNT V
### REPRISAL/RETALIATION

52. The Plaintiff, **DEBORAH GREGORY** realleges paragraphs 1 - 51 as if fully set forth herein.

53. Defendant retaliated against Plaintiff, **DEBORAH GREGORY** herein since it engaged in reprisal and retaliation in violation of the Title VII. Specifically, Plaintiff, **DEBORAH GREGORY** suffered adverse employment consequences as a direct result of her participation or assistance in an EEOC process. As a direct and proximate result of these actions, Plaintiff, **DEBORAH GREGORY** suffered retaliation and reprisal.

54. By reason of the Defendant's actions, Plaintiff, **DEBORAH GREGORY** found it necessary to retain the services of an attorney in these proceedings and heretofore and is therefore entitled to attorney's fees pursuant to the Rehabilitation Act, and under the general equity Powers of the Court.

WHEREFORE, Plaintiff respectfully requests:

a. A declaratory judgment, declaring Defendant's acts, through the acts of its agents, employees and successors, herein complained of to be in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and/or (ADEA).

  b. Compensatory damages against the Defendant for each violation of Plaintiff's rights, as protected by Title VII and (ADEA), for her pain, suffering, emotional distress, humiliation and for any resulting physical and emotional damages, in the amount of $300,000.00;

  c. Attorney's fees, court costs, prejudgment and post judgment interest as provided by law including Title VII; and

  d. Such other and further relief to which Plaintiff may be entitled.

        Respectfully submitted,

        *The Law Office of Enrique Lopez*
        701 N. St. Vrain Street
        El Paso, Texas 79902
        Telephone: (915) 351-0595
        Facsimile: (915) 534-7207

       By: /s/ Enrique Lopez
        ENRIQUE LOPEZ
        State Bar No.: 12563530

       Attorney for Plaintiff